The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Theresa Stephenson. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 3 April 1995 an employment relationship existed between plaintiff-employee and defendant-employer.
3. On 3 April 1995 Riscorp (later purchased by Zenith Insurance Co.) was the carrier on risk.
4. Plaintiff's average weekly wage on 3 April 1995 was $238.00.
5. Plaintiff's medical records regarding this claim are admitted into evidence.
6. The Full Commission takes Judicial Notice of the Industrial Commission Forms which are a part of this claim.
7. The issues to be determined are whether plaintiff is entitled to any benefits for a scar from his 3 April 1995 work-related incident; and, whether plaintiff's epilepsy is causally related to his 3 April 1995 injury.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. On 3 April 1995 plaintiff was a 50 year old male employed by defendant-employer as a material handler who processed fiber.
2. On 3 April 1995 plaintiff was performing his regular duties at defendant-employer when he looked up and a spool of wire fell and hit him on the forehead causing a large laceration. This spool weighed between eight and ten pounds.
3. As a result of this compensable injury, plaintiff sought treatment at the Occupational Health Center. Plaintiff received seven (7) stitches to his forehead to close the laceration.
4. Defendant-employer paid plaintiff's medical expenses for the treatment at the Occupational Health Center.
5. Plaintiff later returned to work earning the same or greater wages than he had earned prior to 3 April 1995.
6. One day in June 1995, the plaintiff felt funny; everything went black and then plaintiff returned to normal. The plaintiff did not lose consciousness and he could not remember the exact date.
7. On 13 October 1994 the plaintiff was at home when he rose to go to the restroom and blacked out. The plaintiff was transported by ambulance to High Point Regional Hospital. Upon arrival, the plaintiff had an altered level of consciousness. The plaintiff exhibited confusion and repetitive speech patterns.
8. The hospital conducted tests and brought in a neurological consultant. A CT scan revealed plaintiff suffered from a form of hydrocephalus, possibly arrested since childhood. Hydrocephalus means literally water on the brain and this condition occurs when there is an excess amount of water of the brain.
9. Dr. Mieden, an expert in neurology, began treating plaintiff in October 1995. An EEG revealed generalized epileptiform activity in the frontal lobe. This activity was located in the same location as plaintiff's compensable head injury on 3 April 1995.
10. A person can develop epilepsy as a result of a blow to the head. Although the chances of developing epilepsy increase with the severity of the blow, plaintiff likely had a pre-existing condition of hydroencyphalus which made him more susceptible to developing epilepsy from head trauma.
11. The greater weight of the evidence is that plaintiff's epilepsy is causally related to his compensable blow to the head on 3 April 1995. Although a person with hydroencephalus may also have seizures, it is rare for hydroencephalus seizure activity to originate in the frontal lobe of the brain. The plaintiff's epilepsy originates in the frontal lobe, consistent with trauma to that location of the brain.
12. As a result of plaintiff's epilepsy arising from his 3 April 1995 work-related incident plaintiff began taking Dilantin. This drug is successful at controlling plaintiff's epileptic activity.
13. Prior to October 1995, the plaintiff did not have a history of seizures. At the time of hearing, the plaintiff was employed by Furnitureland South as a furniture inspector making the same or greater wages than he earned prior to 3 April 1995.
14. The plaintiff has had no further seizures/black-outs since taking Dilantin. However, the plaintiff must exercise extra precaution due to his epilepsy and medication. The plaintiff does not climb ladders, he avoids caffeine and regularly has blood checks to monitor the Dilantin levels in his blood. The plaintiff is still able to drive but he is very cautious.
15. The plaintiff additionally requested compensation for a scar on his forehead. However, upon viewing, the scar is not discernible and fits within a wrinkle or crease in his forehead.
16. The plaintiff has not received a permanent partial disability rating as a result of his epilepsy. An 18 September 1997 EEG did not reveal any current epileptiform activity. If the plaintiff remains seizure-free, Dr. Meiden will discontinue use of the Dilantin.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 3 April 1995 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of this compensable injury to his head on 3 April 1995, the plaintiff developed epilepsy. N.C. Gen. Stat. § 97-2(6).
3. As a result of this 3 April 1995 compensable injury, the plaintiff did not suffer any scarring which constitutes serious, repulsive and permanent facial disfigurement. Any scar which plaintiff may retain does not lessen plaintiff's wage-earning capacity. Plaintiff is not entitled to any compensation for scarring. N.C. Gen. Stat. § 97-31(21).
4. Plaintiff is entitled to have defendants provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. This includes treatment and medication for plaintiff's epilepsy. N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay all medical expenses incurred by plaintiff as a result of his compensable injury 3 April 1995, when bills for the same shall have been submitted to the Industrial Commission. This includes treatment for plaintiff's epilepsy.
2. Defendants shall pay the costs.
This the 30th day of November 1998.
 S/ ____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _____________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
TJB/cnp/db